IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VICTOR BROWN,                          :
                                       :
                Plaintiff,             :       CIVIL NO. 4:CV-03-0631
                                       :
        v.                             :       (Judge McClure)
                                       :
THOMAS JAMES, ET AL.,                  :
                                       :
                Defendants.            :

**<u>MEMORANDUM</u>**

March 18, 2009

## BACKGROUND

Victor Brown ("Plaintiff" or "Brown"), an inmate presently confined at the

State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville") filed this

*pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Presently before the Court is

a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed on behalf of

Remaining Defendants.[1]  (*See* Rec. Doc. No. 182.)  The motion is ripe for

consideration.

---

[1]Remaining  Defendants are the following SCI-Frackville officials:   Deputy
Superintendent for Centralized Services John Kerestes; Personnel Director Jerry
Pritchett; Unit Manager Gary Rosato; ex-Captain Ray Boyle; Jesse James; Counselor
Carl Dudek; Sergeant Dean Harner; and Correctional Officers John Kowalchick,
Alvin Miller, Shawn Roth, Trevor Hardy, and Brian Cress.

On May 11, 2004, the claims against Correctional Officers Frank Kinzel and Joseph Purcell were deemed withdrawn and Plaintiff's proposed Second Amended Complaint (Rec. Doc. No. 40) was accepted.

By Memorandum and Order dated March 17, 2005, a motion to dismiss, or in the alternative, for summary judgment filed on behalf of Defendants (with the exception of Unit Manager Rosato) was granted in part.   (*See* Rec. Doc. No. 68.) Specifically, the claims for monetary damages against the moving Defendants in their official capacities were determined to be barred by the Eleventh Amendment.  In addition, three of Plaintiff's were dismissed as a result of his failure to exhaust administrative remedies.  These claims were that Plaintiff was subjected to verbal abuse on October 25, 2002, that Defendants Schauer, Thomas James, Shannon, and Sheriff improperly handled Grievance No. 28549, and that Defendant Dudek mistreated him on April 5 and 6, 2001.  The Court also concluded that Brown's claims regarding the handling of his institutional grievances did not rise to the level of a constitutional violation.  As a result, summary judgment was entered in favor of Defendants Thomas James, Shannon, Chesney, Dusel, Forr, Popson, Schauer, and Sheriff.[2]

_____

[2]The Court directed the Clerk of Court not to enter judgment in favor of these
(continued...)

2

On July 14, 2008, the instant motion for summary judgment was filed on behalf of Remaining Defendants.  (Rec. Doc. No. 182.)  The Court granted Defendants motions for leave to file their statement of undisputed material facts with their brief, (*see* Rec. Doc. No. 184), for an extension of time to file their brief (*see* Rec. Doc. No. 186), and to exceed the page limitation set forth in M.D. Pa. LR 7.8 (*see* Rec. Doc. No. 188).  On August 1, 2008, Defendants filed a statement of material and undisputed facts (Rec. Doc. No. 189-1), supporting exhibits (Record document nos. 189-2, 189-3), and a supporting brief (Rec. Doc. No. 190.)

On August 20, 2008, Brown filed an opposition brief (Rec. Doc. No. 194), exhibits (Rec. Doc. No. 195), and a response to Defendants' statement of material and undisputed facts (Rec. Doc. No. 196).  He also filed a motion for leave to exceed the page limitation in his supporting brief (Rec. Doc. No. 193), which was granted by Order dated August 22, 2008 (Rec. Doc. No. 197).  On September 4, 2008, Defendants filed a reply brief (Rec. Doc. No. 198).[3]  Accordingly, the motion for summary judgment is ripe for consideration.

---

[2](...continued)
Defendants until disposition of the entire case.  (*See* Rec. Doc. No. 69.)

[3]Plaintiff's motion to strike Defendants' reply brief as untimely (Rec. Doc. No. 199) was denied by Order dated September 15, 2008 because the reply brief was timely filed.  (*See* Rec. Doc. No. 202.)

3

**STANDARD OF REVIEW**

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit. *Id.*; *Justofin v. Metropolitan Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004).

A party seeking the entry of summary judgment bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets its burden of showing an absence of genuine issues of material fact, the nonmoving party must provide some evidence that an issue of material fact remains. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475

U.S. 574, 585-86 (1986).  However, the nonmoving party cannot do so merely by

offering general denials, vague allegations, or conclusion statements; rather, the party

must point to specific evidence in the record that creates a genuine issue as to a

material fact.  *Celotex*, 477 U.S. at 324; *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,*

172 F.3d 238, 252 (3d Cir. 1999).  In evaluating a motion for summary judgment, the

court will draw all reasonable inferences from the evidence in the record in favor of

the nonmoving party.  *Am. Flint Glass Workers Union v. Beaumont Glass Co.,* 62

F.3d 574, 578 (3d Cir. 1995).

**DISCUSSION**

**I.**     **Statement of Facts**

        With the above standard of review in mind, the following are the facts material

to the present motion, drawing any reasonable inferences in favor of the non-moving

party, Brown.[4]

        **A.**     **Facts Regarding Z-Code Status and Removal from Library Job**

        On March 30, 2001, Brown met with his counselor for his annual review, at

which time the inmate's progress with their prescriptive program plan, block reports

and work reports are reviewed.  (Rec. Doc. No. 189-1, Defendants' Statement of

---

        [4]Where Brown admits facts stated by Defendants, the Court will cite solely to
Defendants' Statement of Facts.

Facts, ¶ 5; Rec. Doc. No. 189-2, 6/19/06 Deposition of Victor Brown, at 9, Page 25.)

On April 4, 2001, Brown was scheduled to attend a psychological assessment to

determine the continued need for his Z-Code status and although he knew of the

appointment, he did not attend.  (Rec. Doc. No. 189-1 ¶ 6.)  Brown did not attend the

appointment because his attendance was discretionary, not required.  ( Rec. Doc. No.

196, Plaintiff's Response to Defendants' Statement of Facts, ¶ 6.)

On April 5, 2001, Brown was called to Unit Manager Gary Rosato's office, at

which time Rosato informed him that they were looking into evaluating his Z-code

status and his current job assignment.  (Rec. Doc. No. 189-1 ¶ 7.)  Specifically, Rosato

told Brown that they were looking into taking his library job.  (Rec. Doc. No. 196 ¶ 7;

Rec. Doc. No. 189-2 at 8, Pages 20-21.)  Brown had been working in the prison

library for two years as a clerk making $0.42 per hour.  (Rec. Doc. No. 189-1 ¶ 8.)  On

April 6, 2001, Brown was called to Defendant Rosato's office in response to Brown's

request to go over his March 30, 2001 annual review report.  (*Id.* ¶ 9.)  During the

April 6, 2001 meeting, Rosato also questioned Brown about recent grievances he had

filed.  (Rec. Doc. No. 196 ¶ 9; Rec. Doc. No. 189-2 at 10, Page 26.)  Rosato told

Brown that he had received a call from Deputy John Kerestes saying "if Brown wants

to be noticed, let's notice him."  (Rec. Doc. No. 189-1 ¶ 10.)  Brown's Z-Code and

library job were not mentioned during the April 6 meeting.  (*Id.* ¶ 11.)

On April 11, 2001, a vote was taken as to Brown's eligibility for employment outside of the housing unit.  (*Id.* ¶ 12.)  By a vote of five (5) to one (1), with approval from the Deputies and Superintendent, Brown was disapproved for employment in the library.  (*Id.* ¶ 13.)  The vote sheet indicates that the reason Brown was disapproved was because of his history as an escape risk.  (Rec. Doc. No. 189-3 at 8, 4/11/01 Vote Sheet.)  On April 19, 2001, Brown was called to Defendant Rosato's office and informed of the results of the vote releasing him from his library job and reassigning him as a janitor on the block.  (Rec. Doc. No. 189-1 ¶ 15.)  Brown retained his hourly wage of $0.42 per hour.  (*Id.* ¶ 16.)

On April 19, 2001, Brown met with staff psychologist Denise Kadish for his rescheduled psychological assessment to evaluate his Z-Code status.  (*Id.* ¶ 26; Rec. Doc. No. 189-2 at 16, Pages 51-53.)  Brown testified at his deposition that Defendant Rosato directed Ms. Kadish to perform the evaluation.  (Rec. Doc. No. 189-2 at 16, Page 53.)  Following her evaluation, Ms. Kadish recommended that Brown retain his Z-Code status.  (Rec. Doc. No. 189-1 ¶ 27.)  Following Ms. Kadish's assessment of Brown, a vote was taken on June 8, 2001, resulting in a unanimous decision that Brown retain his Z-Code status.  (*Id.* ¶ 28; Rec. Doc. No. 196 ¶ 28; Rec. Doc. No.

189-3 at 18, 6/8/01 Vote Sheet.)

Brown claims that his Z-Code status was reviewed and he was removed from his library job in retaliation for grievances that he filed.  (Rec. Doc. No. 40, Amended Complaint, ¶ 29.)  During his deposition, Brown identified three (3) grievances that he filed from January 1, 2001 through April 5, 2001.  (Rec. Doc. No. 189-1 ¶ 18; Rec. Doc. No. 196 ¶ 18; Rec. Doc. No. 189-2 at 11-12.)  In Grievance No. 0185-01, which is dated February 14, 2001, Brown complained about Ms. Pastucka placing him on the list for Drug and Alcohol treatment.  (Rec. Doc. No. 189-1 ¶ 19.)  Grievance Officer Stockholm answered the grievance on February 20, 2001.  (*Id.* ¶ 20.)

In Grievance No. 004101, which was filed on February 23, 2001, Brown complained about the denial of his purchase order for a typewriter with a memory because his purchase approval was submitted before the DOC issued a memo banning the purchase of typewriters with memory by inmates.  (*Id.* ¶ 21; Doc. 196 ¶ 21.)

On March 15, 2001, Brown filed a grievance regarding board games not being allowed in the housing units.  (Rec. Doc. No. 189-1 ¶ 22; Rec. Doc. 189-3 at 13-16, 3/5/01 Grievance documents.)  James Forr answered the grievance, and Superintendent Chesney answered the appeal.  (Rec. Doc. No. 189-1 ¶ 23.)

Following the review of his Z-Code and his reassignment to the janitor job,

8

Brown filed six grievances relating to his allegations against Remaining Defendants. (Rec. Doc. No. 189-1 ¶ 33; Rec. Doc. No. 40 ¶ 25.)  In Grievance No. FRA-0482-01, filed on May 14, 2001, Brown complained about his removal from his library job and the review of his Z-Code status.  (Rec. Doc. No. 189-1 ¶ 34; Doc. 189-3 at 20, 5/14/01 Grievance.)  On May 22, 2001, Defendant Rosato answered Brown's Grievance No. FRA-0482-01 by explaining that his job was changed for security reasons because he was listed as an escape risk inmate.  (Rec. Doc. No. 189-1 ¶ 35.)  Rosato explained that Brown's former employment as a library worker was an oversight.  (*Id.*)  Rosato also explained that Brown's single cell status had come into question after staff became aware that Brown was holding a library position.  (*Id.* ¶ 36.)

###### B.   Facts Relating to Verbal Threats

On March 8, 2002, while he was in the serving line, Brown complained of slop on the counter, and Defendant Miller responded that Brown should be happy that he is getting anything to eat.  (*Id.* ¶ 39.)  Defendant Miller then turned to an officer-trainee and said "Not a day goes by when these inmates aren't complaining about something. He's a fucking asshole."  (*Id.* ¶ 40.)

Brown alleges that, on August 14, 2002, he approached Defendant Trevor

Hardy to complain about a problem on the serving line during the lunch meal and was told by Hardy to "get the fuck out of my face." (*Id.* ¶ 44.)  Brown reported Hardy's conduct to Defendant Jesse James on the same date, and James told Brown that "he had seen the exchange between Officer Hardy and [Brown], and if [Brown] had taken one more step in the CO's direction, he would have taken [Brown] down himself." (*Id.* ¶ 48.)  James ordered Brown to get up against a wall and put his face within inches of Brown's face and said "you are that close to going to the Hole" while using his thumb and index finger to measure a half inch to indicate how close Plaintiff was to being sent to the RHU.  (*Id.* ¶ 49.)  James told Brown that he should feel lucky he was going back to the block on his own power.  (*Id.* ¶ 50.)

### C.   **Facts Relating to Misconducts**

#### 1.   **Misconduct 401431**

On November 16, 2001, Defendant Pritchett issued misconduct 401431 accusing Brown of lying to an employee when he made an accusation that James Forr was intoxicated while on duty on October 10, 2001.  (*Id.* ¶ 54; Rec. Doc. No. 196 ¶ 54; Rec. Doc. No. 189-3 at 25, Misconduct 401431.)  On November 27, 2001, the misconduct was dismissed without prejudice.  (Rec. Doc. No. 189-1 ¶ 55.)  Brown was not placed in pre-hearing confinement pending the determination of this

misconduct. (*Id.* ¶ 57.) He was not locked up or confined. (*Id.*) Nothing about his physical confinement or block location changed. (*Id.*)

### 2.   <u>Misconduct No. A34544</u>

On or about November 19, 2001, Brown complained to Lieutenant Dousal regarding toast that he had been served the previous day which he felt was untoasted and inedible. (*Id.* ¶ 60; Rec. Doc. No. 196 ¶ 60; Rec. Doc. No. 189-2 at 23, Pages 78-79.) The Lieutenant had nothing to say about it. (Rec. Doc. No. 189-2 at 23, Page 79.) On December 7, 2001, Brown spoke with Defendant Boyle regarding the toast incident, and Boyle "acted like he didn't know what [Brown] was talking about." (*Id.* at 24, Pages 84-85.)

On December 9, 2001, Defendant Kowalchick issued Brown Misconduct No. A34544 for threatening another person and Defendant Boyle, a captain, approved the misconduct. (Doc. 189-1 ¶ 62.) Brown pled not guilty to the misconduct but was found guilty and sanctioned with 60 days in the RHU. (*Id.* ¶ 63.) While in the RHU, Brown suffered "migraines every day or so" because the lights were on 24 hours per day. (*Id.* ¶ 64.)

### 3.   <u>Misconduct 404985</u>

On May 28, 2002, Brown questioned Defendant Cress about Defendant Harner

11

smoking in the control center.  (*Id.* ¶ 68.)  Harner later told Brown, "It's my fucking bubble.  I'll do what I want in there."  (Rec. Doc. No. 189-2 at 31, Page 111.)  Later in the day on May 28, 2002, Defendant Cress issued misconduct 404985 to Brown for refusing to obey an order, using abusive language, and failure to stand count.  (Rec. Doc. No. 189-1 ¶ 69.)  Brown pled guilty to misconduct 404985 and was sanctioned to a fifteen (15) day cell restriction.  (*Id.* ¶ 70.)

### 4.   Misconduct A109548

On October 26, 2002, Brown was issued misconduct A109548 by Defendant Roth for refusing to obey an order.  (*Id.* ¶ 75.)  The misconduct was served by Defendant Cress.  (*Id.*)  At deposition, Brown admitted that, before he was given misconduct A109548, he improperly interfered with Roth's instructions to another inmate regarding the proper shoes to be worn to block out[5].  (Rec. Doc. No. 189-2 at 37-38, Pages 136-38.)  Brown pled guilty to misconduct A109548 and was sanctioned to thirty (30) days in the RHU.  (Rec. Doc. No. 189-1 ¶ 78.)   He claims that he again suffered almost constant migraine headaches during his time in the RHU.  (Rec. Doc. No. 189-2 at 40, Page 149.)

_____

[5]Brown testified during his deposition that "block out" refers to indoor recreation that is held in a railed-in block below the regular level of the floors. (*See* Rec. Doc. No. 189-2 at 37, Page 136.)

## II.   Analysis

### A.   Eighth Amendment Conditions of Confinement Claims

#### 1.   Z-Code Status and Removal from Library Job

Brown alleges that if his Z-Code status had been removed and he had been placed in a double cell, it would have been cruel and unusual punishment in violation of his Eighth Amendment rights.  (Rec. Doc. No. 189-1 ¶ 30; Rec. Doc. No. 189-2 at 18, Page 59.)  However, because it was recommended that Brown retain his single cell status, he admits that his evaluation at the insistence of Mr. Rosato did not violate his Eighth Amendment rights.  (Rec. Doc. No. 189-1 ¶ 31; Rec. Doc. No. 189-2 at 18, Page 59.)

Accordingly, the Court will analyze solely Brown's claim that his removal from his library job violated his Eighth Amendment rights because he was taken from a higher status job to a reduced status, which caused some embarrassment, degradation, and shame.  (Rec. Doc. No. 189-1 ¶ 24; Rec. Doc. No. 189-2 at 20, Page 67.)

42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The " physical injury" requirement of § 1997e(e) may be satisfied by a

"less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury." *Mitchell v. Horn,* 318 F.3d 523, 534 (3d Cir.2003). In *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that, where a plaintiff fails to allege actual injury, section 1997e(e) bars recovery of compensatory damages. However, the Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm. *See Mitchell*, 318 F.3d at 533-34.

Brown has failed to make a showing that he suffered any physical injury as a result of the reduction of his job status, and thus he is barred from recovering compensatory damages. *See Ostrander v. Horn*, 145 F. Supp. 2d 614, 619 (M.D. Pa. 2001). However, to the extent that Brown still could pursue nominal and/or punitive damages, his Eighth Amendment claim against Rosato still fails. Prisoners do not have a constitutional right to employment, and thus it has been held that the deprivation of employment does not violate the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Therefore, Defendant Rosato is entitled to summary judgment with respect to Brown's claims against him that the evaluation of his Z-Code status and his removal from his library job constituted a violation of his rights under the Eighth Amendment.

14

## 2.   Verbal Statements and Threats

Brown alleges that Defendant Hardy's comment to "get the fuck out of my face" violated his Eighth Amendment rights because it was "verbally demeaning, it was cruel and unusual."  (Rec. Doc. No. 189-2 at 35, Page 126.)

In addition, Brown believes that Defendant James violated his Eighth Amendment rights when he ordered him against a wall and said ". . .  you are that close to going to the Hole" because it was "a demeaning situation."  (*Id.* at 36, Page 133.)

Brown admits that Defendant Miller's comment about him that "not a day goes by when these inmates aren't complaining about something. He's a fucking asshole" did not violate his Eighth Amendment rights because it was just a minor embarrassment.  (*Id.* at 29, Pages 104-05.)  Therefore, the Court will limit its analysis to Brown's claims regarding the verbal statements and threats made by Defendants Hardy and James.

It has been recognized that the use of words generally cannot constitute an assault actionable under section 1983.  *See Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal

harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *See Fisher v. Woodson*, 373 F. Supp. 970, 973 (E.D. Va. 1973). *See also Balliet v. Whitmire*, 626 F. Supp. 219, 228-29 (M.D. Pa. 1996) ("[v]erbal abuse is not a civil rights violation . . ."), *aff'd*, 800 F.2d 1130 (3d Cir. 1986) (Mem.).  A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, *see Prisoners' Legal Ass'n*, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause, *see Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991).

However, verbal harassment or threats, with some reinforcing act accompanying them, may state a constitutional claim.  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words.  *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); *Douglas v. Marino*, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a butcher knife).  It also has been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on

16

the inmate's exercising some constitutionally protected right.  *Bieros v. Nicola,* 860 F.

Supp. 226, 233 (E.D. Pa. 1994); *see also Prisoners' Legal Ass'n*, 822 F. Supp at 189;

*Murray*, 809 F. Supp. at 384.

There is no indication that any of the verbal threats voiced against

Brown were accompanied by a reinforcing act involving a deadly weapon as

contemplated under *Northington* and *Douglas*.  There also is nothing in the record to

show that the alleged threats were conditioned on Brown's exercise of a

constitutionally protected right.  In addition, there is no claim that Plaintiff suffered a

change or denial of a constitutionally protected right or status.  Based upon the above

discussion, entry of summary judgment in favor of Remaining Defendants Hardy and

James with respect to Plaintiff's allegations of verbal harassment is appropriate.

### 3.   **Misconducts**

Brown asserts that he suffered in violation of the Eighth Amendment when he

was placed in the RHU after being found guilty of misconduct A34544, which was

issued by Defendant Kowalchick and approved by Defendant Boyle, because he had

headaches while he was in the RHU.  (Rec. Doc. No. 189-1 ¶ 66; Rec. Doc. No. 189-2

at 27, Pages 94-95.)

Similarly, Brown alleges that his Eighth Amendment rights were violated by

Defendant Roth's issuance of misconduct A109548 because he suffered almost

17

constant migraines during his thirty (30) day sentence in the RHU after being found guilty of that misconduct.  (Rec. Doc. No. 189-1 ¶¶ 78, 80; Doc. 189-2 at 40, Page 149.)  Brown testified at his deposition that he is not asserting any claim against Defendant Cress in his role of serving misconduct A109548.  (Rec. Doc. No. 189-1 ¶ 77; Rec. Doc. No. 189-2 at 40, Page 147.)

Brown also asserts that his Eighth Amendment rights were violated as a result of misconduct 404985, which Defendant Cress issued to Brown after he questioned Cress about Defendant Harner smoking in the control center.  (Rec. Doc. No. 189-1 ¶ 72.)  Brown alleges that his Eighth Amendment rights were violated because he suffered the embarrassment of going to a hearing, and missed work and lost pay during his fifteen (15) day sentence to cell restriction.  (*Id.*; Rec. Doc. No. 189-2 at 31, Pages 112-13.)

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (citing *Rhodes*, 542 U.S. at 349).  The Eighth Amendment prohibition against cruel and unusual punishment requires that prison officials provide "humane conditions of confinement" including "adequate food, clothing, shelter and medical care." *Id.*        "[T]o establish an Eighth Amendment violation an inmate must allege both an objective element- that the deprivation was sufficiently serious-and a subjective element- that a

prison official acted with a sufficiently culpable state of mind, *i.e.,* deliberate indifference." *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996) (citing *Wilson v. Seiter,* 501 U.S. 294 (1991)).  "The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.'" *Fuentes v. Wagner,* 206 F.3d 335, 345 (3d Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)).  To satisfy the subjective component, an inmate must prove that a prison official demonstrated "deliberate indifference" to a serious risk of harm to which the inmate was exposed. *Farmer,* 511 U.S. at 836-37.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Brown admitted during his deposition that he would not categorize his fifteen (15) days to cell restriction as cruel and unusual punishment or as depriving him of the basic necessities of life.  (*See* Rec. Doc. 189-2 at 31, Pages 112-13.)  In fact, Brown freely admitted that he had a television in his cell during his fifteen (15) day sentence. (*See id.* at 32, Page 114.)  Therefore, the Court finds that no violation of Brown's

Eighth Amendment rights occurred as a result of Defendant Cress' issuance of misconduct 404985 and that Cress is entitled to summary judgment on that claim.

Brown claims that Defendants Kowalchick, Boyle, and Roth violated his Eighth Amendment rights by issuing and/or approving misconducts that led to his placement in the RHU, where he suffered headaches as a result of the lights being on twenty-four hours per day.  Under certain circumstances, requiring inmates to live in constant illumination may constitute a violation of the Eighth Amendment.  *See Bacon v. Minner,* 229 Fed. Appx. 96, 99-100 (3d Cir. 2007).  However, Brown fails to offer evidence that the lighting in the RHU caused his headaches or that Defendants were aware that he suffered constant headaches.  While Brown points to medical records showing that he was prescribed Naproxen and Darvocet during times that he was in the RHU, the mere fact that he was prescribed medications that are used to treat inflammation and pain does not demonstrate that he had headaches, let alone that they were caused by the lighting in the RHU.  (*See* Rec. Doc. No. 194 at 23-34, Plaintiff's opposition brief; Rec. Doc. No. 195-1 at 77, Physician's Orders 12/2001-1/2002; Rec. Doc. No. 195-2 at 4, Subjective Objective Assessment Plan Notes, 11/2002.)  In fact, the medical records from November 2002 indicate that Brown was suffering from a urinary problem, and therefore, it is possible that the medication was prescribed to treat that condition.  (*See* Rec. Doc. No. 195-2 at 4.)  Therefore, Brown has failed to

establish claim that his Eighth Amendment rights were violated as a result of the

issuance and/or approval of misconducts that led to his placement in the RHU where

he suffered headaches, and Defendants Kowalchick, Boyle, and Roth are entitled to

summary judgment on this claim.

### B.   First Amendment Retaliation Claims

Brown claims that Defendants retaliated against him in violation of his First

Amendment rights by attempting to remove his Z-Code status, removing him from his

job, making verbal statements and threats to him, and by filing baseless misconducts

against him.

"Retaliation for the exercise of a constitutional right is itself a violation of

rights secured by the Constitution actionable under section 1983."  *White v. Napoleon*,

897 F.2d 103, 111-12 (3d Cir. 1990).  In *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d

Cir. 2000), the Third Circuit Court of Appeals held that, "government actions, which

standing alone do not violate the Constitution, may nonetheless be constitutional torts

if motivated in substantial part by a desire to punish an individual for the exercise of a

constitutional right."  229 F.3d at 224-25 (quoting *Thaddeus-X v. Blatter*, 175 F.3d

378, 386 (6th Cir. 1999) (en banc)).  Accordingly, the law of this circuit is clear that a

prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  *See id.* at 225.

In *Rauser v. Horn*, 241 F.3d 330 (2001), the Court of Appeals for the Third Circuit revisited government action retaliation claims and set forth the elements of a prisoner's cause of action and the burden of proof he must carry to succeed.   As a threshold matter, a prisoner-plaintiff must prove that the conduct which led to the alleged retaliation was constitutionally protected.  *Id.* at 333 (citing *Thaddeus-X*, 175 F.3d at 389); *see also Drexel v. Vaughn*, 1998 WL 151798 at *7 (E.D. Pa.  April 2, 1998).

If the prisoner-plaintiff meets the threshold element, he then must show that he suffered some "adverse action" at the hands of prison officials.  *Rauser*, 241 F.3d at 333.  Under *Allah*, a prisoner-plaintiff satisfies this requirement by demonstrating that the action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights."  *Allah*, 229 F.3d at 225 (citations omitted).

Once these two threshold criteria are met, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action against him.  To demonstrate this causal link, a prisoner plaintiff must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline

him." *Rauser*, 241 F.3d at 333 (quoting *Mount Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 Fed. Appx. 491, 497-98 (3d Cir. 2005) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  *Rauser*, 241 F.3d at 334.  The Court now will turn to an analysis of each of Brown's retaliation claims.

### 1.    Z-Code Status and Removal from Library Job

Brown claims that the review of his Z-Code status violated his First Amendment rights because it was an attempt to chill his constitutional rights to

23

redress grievances, and had his Z-Code status been removed, it would have been punishment for filing grievances.  (Rec. Doc. No. 189-1 ¶ 29; Rec. Doc. No. 189-2 at 17, Page 56.)  Brown also claims that his removal from his library job violated his First Amendment rights because he was removed in furtherance of a threat to take his job for filing grievances.  (Rec. Doc. No. 189-1 ¶ 17; Rec. Doc. No. 196 17; Rec. Doc. No. 189-2 at 19-20, Pages 65-66.)  Specifically, he claims that Defendant Rosato moved him from his library job to a janitor position on April 19, 2001 in retaliation for grievances Brown filed between January 2001 and April 5, 2001.  (*See* Rec. Doc. No. 189-1 ¶¶ 15, 17, 18; Rec. Doc. No. 189-2 at 11, Pages 30-31.)

Brown alleges that he was retaliated against for filing grievances.  It is clear that the filing of prison grievances constitutes protected conduct that falls within the protections of the First Amendment.  *See e.g. Mitchell*, 318 F.3d at 530; *Allah*, 229 F.3d at 224-25.  Accordingly, he meets the first threshold criteria to sustain a retaliation claim.

As to the second element necessary to maintain a retaliation claim, Brown cannot show that the review of his Z-Code status was an "adverse action" against him because after a psychological evaluation, it was recommended that he retain his single cell status, and he in fact retained this status after a unanimous vote was taken on June

8, 2001.  (*See* Rec. Doc. No. 189-3 at 18, 6/8/01 Vote Sheet.)  Moreover, while the

removal from his job could be interpreted as "adverse action," it does not appear that

it deterred Brown from filing grievances inasmuch as he alleges in his Amended

Complaint that he filed six grievances after the review.  (*See* Doc. 40 ¶ 25.)

As to his removal from his job, Brown has offered copies of his Prescriptive

Program Plans from March 2000 and March 2001 recommending that he "continue

library position" to demonstrate that he was removed him from his library job out of

retaliation for filing grievances rather than because he posed an escape risk.  (*See* Doc.

195-1 at 19, 21, Exs. 9, 10.)  Defendant Rosato explained in answering Brown's

grievance filed after his job was changed that Brown's former employment as a library

worker was an oversight.  (*See* Rec. Doc. No. 189-1 ¶ 35.)

However, even if Brown's removal from his job constituted an adverse action,

Brown has not demonstrated a causal link between his filing of grievances and his

removal from his job.  Specifically, he has not shown that the three grievances that he

filed between January and April 2001 were a "substantial or motivating factor" in the

decisions to review his Z-Code status and remove him from his library job.  *See*

*Rauser*, 241 F.3d at 333.  It is undisputed that Brown filed grievances relating to his

attendance at Drug and Alcohol treatment, a typewriter with memory, and board

25

games on the housing units.  (*See* Doc. 189-1 ¶¶ 19, 21-22; Doc. 196 ¶¶ 19, 21-22.)

None of these grievances make allegations against Rosato or were answered by him.

(*See* Rec. Doc. No. 189-1 ¶¶ 19-23.)  Therefore, while Brown maintains that

Defendant Rosato retaliated against him for filing these three grievances, he has not

shown that there was any causal link between the grievances and Rosato's actions.

In his opposition brief, Brown also claims to have filed grievances on March 8,

2001 relating to the "illegal commissary mark-up of certain products" and on March

15, 2002 regarding the "selling in commissary of unlabeled pastries."  (*See* Doc. 194

at 14.)  Brown also has failed to demonstrate any involvement by Defendant Rosato

with these grievances.  Because Brown has failed to show a causal link between his

filing of grievances and the evaluation of his Z-Code status and removal from his job,

his retaliation claim against Defendant Rosato fails, and Rosato is entitled to summary

judgment on this claim.

## 2.   <u>Verbal Statements and Threats</u>

Brown claims that his First Amendment rights were violated by Defendants

Kerestes, Rosato, Miller, Hardy, and James based on their verbal statements and/or

threats.

First, Brown claims that Defendant Rosato stated that Defendant Kerestes said

"If Brown wants to be noticed, let's notice him."  (*See* Rec. Doc. No. 189-1 ¶ 10; Rec. Doc. No. 189-2 at 12, Page 36.)  Brown alleges that this statement violated his First Amendment rights.  (Rec. Doc. No. 189-1 ¶ 37.)

Next, Brown claims that Defendant Miller's comment about him that "not a day goes by when these inmates aren't complaining about something.  He's a fucking asshole" violated his First Amendment rights because Brown had voiced a complaint, and Miller "tried to make it hard for me to complain, try to chill my constitutional rights to redress grievances."  (*See id.* ¶¶ 40-41; Rec. Doc. No. 189-2 at 29, 102, 104.)

Brown also claims that Defendant Hardy's comment to "get the fuck out of my face" violated his First Amendment rights because Brown stated a grievance verbally, and Hardy "didn't address the grievance; instead he abused me verbally."  (Rec. Doc. No. 189-1 ¶¶ 44-45; Rec. Doc. No. 189-2 at 33-34, Pages 121, 124.)

Finally, Brown claims that Defendant James violated his First Amendment rights when he ordered Brown against a wall and said ". . .  you are that close to going to the Hole" and told him he was lucky to be walking back to the block on his own power because Brown was going to James to redress a grievance when James threatened him.  (*See* Rec. Doc. No. 189-1 ¶¶ 49-51; Rec. Doc. No. 189-2 at 35-36, Pages 129-133.)

27

The Court finds that the verbal statements Brown asserts were made by Defendants Kerestes, Rosato, Miller, Hardy, and James do not rise to the level of retaliatory actions in violation of the First Amendment. *See Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (stating that "criticism, false accusations, [and] verbal reprimands" do not rise to the level of actionability under the First Amendment). Even if the statements were interpreted as direct or veiled threats against Brown, mere verbal threats do not qualify as retaliatory actions. *See Fischer v. Transue,* No. 04-2756, 2008 WL 3981521, at *8 (M.D. Pa. August 22, 2008) (citing *Alexander v. Forr*, No. 04-370, 2006 WL 2796412, at *4 (M.D. Pa. Sept. 27, 2006) ("Verbal abuse or threats do not constitute the type of adverse action sufficient to support a retaliation claim."); *Bartelli v. Lewis*, No. 04-0908, 2005 WL 2406048, at *2 (M.D. Pa. Sept. 29, 2005) ("[W]e determine that verbal threats do not constitute an 'adverse action' and, therefore, do not fulfill a requisite element of a retaliation claim."); *Bartelli v. Bleich*, No. 04-0899, 2005 WL 2347235, at *3 (M.D. Pa. Sept. 26, 2005) ("[M]ere verbal threats cannot be viewed as an 'adverse action' sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.")).  Therefore, Defendants Kerestes, Rosato, Miller, Hardy, and James are entitled to summary judgment as to Brown's claim that their verbal statements to him constituted retaliation.

### 3.   **Misconducts**

Brown claims that Defendants Boyle, Cress, Harner, Kowalchick, Roth, and Pritchett filed misconducts against him in retaliation for the grievances he filed.  (*See* Rec. Doc. No. 189-1 ¶¶ 54-78.)

With regard to Misconduct Numbers A34544, 404985, and A109548, Brown fails to establish the threshold requirement to maintain a retaliation claim that the conduct he was engaged in which led to the alleged retaliation was constitutionally protected.  *See Rauser*, 241 F.3d at 333.  "In order to receive First Amendment protection, an inmate's speech must relate to a matter of public concern."  *Oriakhi v. Wood*, No. 05-0053, 2006 WL 859543, at *5 (M.D.Pa. Mar. 31, 2006) (citing *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005)).  The misconducts at issue here were precipitated by Brown's comments regarding untoasted, inedible toast, smoking by a DOC employee in the control room, and the proper footwear for block out.  (*See* Doc. 189-2 at 23-24, 31, 37.)  These comments clearly do not relate to matters of public concern.  Therefore, Brown's claim that Defendants Kowalchick, Boyle, Cress, Harner, and Roth retaliated against him by filing misconducts against him fails, and summary judgment will be granted in their favor on this claim.

With regard to Misconduct No. 401431 issued by Defendant Pritchett, Brown

alleges that Pritchett issued the misconduct in retaliation for Brown filing a grievance concerning a DOC employee allegedly being intoxicated while on duty. (*See* Rec. Doc. No. 189-1 ¶¶ 54, 56.) Because he alleges that this misconduct was precipitated by his filing of a grievance, Brown meets the threshold requirement of showing that he was engaged in a constitutionally protected activity in that the filing of prison grievances constitutes protected conduct that falls within the protections of the First Amendment. *See e.g. Mitchell*, 318 F.3d at 530; *Allah*, 229 F.3d at 224-25.

However, Brown fails to establish the second element to maintain a retaliation claim in that he has failed to show that Defendant Pritchett's filing of a misconduct against him was an adverse action sufficiently negative to deter him from exercising his First Amendment rights. *See Allah*, 229 F.3d at 225. During his deposition, Brown testified that he does not know Pritchett, has never seen him, and has no direct evidence that Pritchett filed the misconduct against him out of retaliation. (*See* Doc. 189-2 at 22-23, Pages 77-78.) There is no evidence in the record that Pritchett filed the misconduct for any reason other than that he determined that Brown had lied and misused the grievance system. Moreover, Brown admitted in his deposition that the misconduct did not stop him from filing grievances, and therefore, he was not deterred from exercising his First Amendment rights. (*See* Rec. Doc. No. 189-2 at 22, Page

30

77.)  Because Brown has failed to establish the elements necessary to maintain a

retaliation claim against Defendant Pritchett, summary judgment will be entered in

Pritchett's favor on this claim.

### C.      Fourteenth Amendment Due Process Claims

#### 1.      Z-Code Status and Removal from Library Job

Brown alleges that the evaluation of his Z-Code status violated his

Fourteenth Amendment rights because Defendant Rosato circumvented the system in

an attempt to retaliate against Brown for filing grievances.[6]  (*See* Rec. Doc. No. 189-1

¶ 32; Rec. Doc. No. 189-2 at 18, Page 59.)  He also alleges that his Fourteenth

Amendment rights were violated when Rosato removed him from his library job

because he believes Rosato used the system to punish him even though Rosato filed

the correct paperwork.[7]  (*See* Rec. Doc. No. 189-1 ¶ 25; Rec. Doc. No. 189-2 at 20,

---

[6]Brown's assertion that the evaluation of his Z-Code status was the result of a retaliatory motive already was addressed, and it was determined that Rosato is entitled to summary judgment on that claim.

[7]The issue as to whether Brown was removed from his job as a form of punishment was addressed within the context of Brown's retaliation claim against

(continued...)

Page 68.)

The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists, and if so, the next step is to define what process is mandated to protect it.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Prison conditions do not impact a protected liberty interest unless the prison's action impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995).

As to the evaluation of Brown's Z-Code status, the United States Supreme Court has held that a federal inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss."  *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *James v. Reno*, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999) (citation omitted) (a federal inmate "has no liberty interest in his security classification").  In this case,

---

[7](...continued)
Rosato, and it was determined that Defendant Rosato is entitled to summary judgment on that claim.

Brown has not alleged that the mere evaluation of his single cell status resulted in the type of atypical or significant hardship necessary to establish a constitutional violation under *Sandin*. *See James*, 39 F. Supp. 2d at 40. Accordingly, Defendant Rosato is entitled to summary judgment on this claim.

As to Brown's Fourteenth Amendment claim regarding his removal from his job, an inmate does not have a protected liberty or property interest in continued prison employment. *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989); *Bryan v. Werner*, 516 F.2d 233, 240 (3d Cir. 1975). The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right. *Wilkins v. Bittenbender*, No. 04-2397, 2006 WL 860140, at *9 (M.D. Pa. March 31, 2006) (Conaboy, J.). "[A]n inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest." *Id.* (quoting *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995)). *See also Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding inmates have no property interest in continuing in work-release program); *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (finding Constitution does not create a property interest in prison employment). Because Brown did not have a protected property interest in his library job, his removal from the job does not constitute a violation of his First Amendment rights, and Defendant

33

Rosato is entitled to summary judgment on this claim.

2.   **Verbal Statements and Threats**

Brown alleges that Defendant Hardy's comment to "get the fuck out of my face" violated his Fourteenth Amendment rights because Hardy has certain procedures to follow, and he didn't follow them.  (*See* Rec. Doc. No. 189-1 ¶ 47; Rec. Doc. No. 189-2 at 35, Page 126.)

Brown also claims that Defendant James violated his Fourteenth Amendment rights when he ordered Brown against a wall and said ". . .  you are that close to going to the Hole" and told him he was lucky to be walking back to the block on his own power because "there's a process" and it isn't part of the "procedure to put me on a wall and threaten me, or intimidate me."  (*See* Rec. Doc. No. 189-1 ¶ 53; Rec. Doc. No. 189-2 at 37, Page 134.)

Brown admits that Defendant Miller's comment about him that "not a day goes by when these inmates aren't complaining about something. He's a fucking asshole" did not violate his Fourteenth Amendment rights.  (*See* Rec. Doc. No. 189-1 ¶ 43; Rec. Doc. No. 196 ¶ 43.)  Thus, only the statements made by Defendants Hardy and James are at issue.

As already noted, in order to determine whether a due process violation has

34

occurred, an initial determination must be made that a liberty interest exists.  *See Shoats*, 213 F.3d at 143.  An inmate does not have a cognizable liberty or property interest to be free from verbal threats.  *See Pittsley*, 927 F.2d at 7 ("Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.") (citations omitted).  Therefore, Defendants Hardy and James are entitled to summary judgment as to Brown's claim that their statements violated his rights under the Fourteenth Amendment.

### 3.   **Misconducts**

Brown alleges that Defendants Kowalchick and Boyle violated his Fourteenth Amendment rights because even though all the proper paperwork was filed and he had a hearing after which he was found guilty of misconduct A34544, his due process rights were violated because the system was used to punish him.  (*See* Rec. Doc. No. 189-1 ¶ 67; Rec. Doc. No. 189-2 at 27, Page 95.)

Brown alleges that his Fourteenth Amendment rights were violated by misconduct 404985 because Defendants Cress and Harner twisted the system to punish him.  (*See* Rec. Doc. No. 189-1 ¶ 74; Rec. Doc. No. 196 ¶ 74.)  He admits that all of the proper paperwork was filed, but admits that he did not get the result that he

thought he should.  (*See* Rec. Doc. No. 189-2 at 32, Pages 114-15.)

Finally, Brown alleges that, even though Defendant Roth used the system and filed the correct paperwork under the DOC, misconduct A109548 was not filed for correct reasons.  (*See id.* at 41, Pages 149-50.)

Brown does not allege a Fourteenth Amendment violation with respect to misconduct 401431 issued by Defendant Pritchett.

The Supreme Court has established due process standards for prisoners involved in disciplinary hearings.  See *Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974).  The *Wolff* Court held that an inmate must receive: (1) written notice at least twenty-four (24) hours before the hearing; (2) an opportunity to present witnesses and documentary evidence; (3) aid in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement of the decision by the factfinder.  *Id.* The record establishes that, with respect to the misconducts that are at issue here, Brown either pled guilty or attended a hearing at which he was found guilty.  (*See* Rec. Doc. No. 189-1 ¶¶ 63, 70, 78.)  He has admitted that the correct procedures were followed and the correct paperwork was filed, but he claims that he just did not obtain the result he wanted or the system was manipulated in some way to get back at him. (*See* Rec. Doc. No. 189-2 at 27, 32, 41.)  However, because he has not claimed that he

was denied notice, an opportunity to present witnesses or evidence, an impartial tribunal, or a statement of reasons for the decision, Brown has failed to demonstrate a due process violation with regard to these misconducts.  Accordingly, Defendants Kowalchick, Boyle, Cress, Harner, and Roth are entitled to summary judgment as to the Fourteenth Amendment claims against them.

**CONCLUSION**

For the foregoing reasons, Remaining Defendants' motion for summary judgment will be granted.  In addition, the Court will direct the Clerk of Court to enter a judgment in favor of Defendants, including those whose previous motion for summary judgment was granted on March 17, 2005, (*see* Rec. Doc. Nos. 68-69), and to close the case.

An appropriate Order will enter.

   s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

37

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VICTOR BROWN,                      :
                                          :
            Plaintiff,           :           CIVIL NO. 4:CV-03-0631
                                          :
        v.                    :           (Judge McClure)
                                          :
THOMAS JAMES, ET AL.,       :
                                          :
          Defendants.         :

## ORDER

March 18, 2009

**AND NOW,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.     The motion for summary judgment (Rec. Doc. No. 182) filed on behalf of Remaining Defendants is **GRANTED**.

2.     The Clerk of Court is directed to enter **JUDGMENT** in favor of Remaining Defendants Kerestes, Pritchett, Rosato, Boyle, Jesse James, Dudek, Harner, Kowalchick, Miller, Roth, Hardy, and Cress.

3.     In accordance with this Court's March 17, 2005 Orders (Rec. Doc. Nos. 68, 69), the Clerk of Court also is directed to enter **JUDGMENT** in favor of Defendants Thomas James, Shannon, Chesney, Dusel, Forr, Popson,

Schauer, and Sheriff.

4.      The Clerk of Court is directed to **CLOSE** this case.


　　　　　　　　　　　　　　　　s/ James F. McClure, Jr.
　　　　　　　　　　　　　　　　JAMES F. McCLURE, JR.
　　　　　　　　　　　　　　　　United States District Judge